(C. D. 555)

STREAMLINE BUTTON CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 19, 1941)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*John J. McDermott,* special attorney, and *Frank X. O'Donnell, Jr.,* junior attorney), for the defendant.

Before WALKER and KEEFE, Judges

WALKER, Judge: The merchandise involved in this suit against the United States was assessed with duty by the collector of customs at the compound rate of 1 cent each, plus ⅗ of 1 cent per dozen for each 1 cent the value exceeded 20 cents per dozen, plus 50 per centum ad valorem, which rate equals 110 per centum ad valorem, under the following provision in paragraph 1527 (c) (2) of the Tariff Act of 1930:

PAR. 1527. * * *

(c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished:

* * * * * * *

(2) composed wholly or in chief value of metal other than gold or platinum * * * 1 cent each and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem.

The protest claim relied upon is that under the provisions of the foregoing paragraph and subparagraph as modified by the Czechoslovakian Trade Agreement reported in T. D. 49458, in force at the time the merchandise involved was imported, and which, in effect, amended paragraph 1527 (c) (2), *supra,* to read as follows:

Buckles valued above 20 cents but not above $5 per dozen pieces, finished or unfinished, composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), ½ cent each and ⁹⁄₁₀ cents per dozen for each 1 cent the value exceeds 20 cents per dozen, and 25 percent ad valorem.

The foregoing rate is equivalent to 55 per centum ad valorem and the trade agreement thus halved the rate to be applied to buckles of the description given therein.

The question before us therefore is whether or not the merchandise in issue consists of buckles, it appearing that they are valued above 20 cents but not above $5 per dozen pieces, that they are finished, and that they are composed wholly or in chief value of metal other than gold or platinum.

Samples of the merchandise in issue are before us in the form of collective exhibit 1. They are all alike in that they consist of two pieces of metal worked in fancy designs, one piece being fitted with a curved tongue of metal which fits into a slot, loop, bar, or hole in the other piece, there being provision on both pieces for sewing or fastening them to belts or fabrics.

The return of the examiner in the appraiser's office who advisorily classified the merchandise appears on the invoice as "dress clasps," but on the witness stand he testified that he returned them as "like articles" to "buckles" under paragraph 1527 (c) (2), *supra*.

On behalf of the plaintiff Arnold C. Blumlein testified that he was the buyer for the importing company who selected the items at bar for purchase, and that he had been engaged in the business of buying and selling buttons, buckles, and jewelry items at wholesale for 15 years. He identified the articles represented by collective exhibit 1 as "two-piece buckles" and stated that in his experience they were sold and billed as buckles. They are used, he said, to fasten belts or parts of dresses.

William L. Myers testified on behalf of the defendant that he was a manufacturer of metal goods such as buttons, buckles, clasps, bag trimmings, and various specialties, and that he had bought and sold such articles, as well as supervised their manufacture. Based upon his experience he stated he would designate articles like collective exhibit 1 as "two-piece buckles, clasps buckles, or as a clasp," the terms being interchangeable, and on cross-examination he stated that the term "buckles" generally might be applied to the items embraced in collective exhibit 1.

Our attention has been directed by counsel for the defendant to the definitions given by lexicographers to the term "buckle." For instance, Webster's New International Dictionary defines the noun "buckle" as follows:

1. A fastening for two loose ends, as of a belt or strap, attached to one and holding the other by a catch, typically by a tongue in a link-like frame.

2. A similar device of ornamental design, used, esp. by women, on girdles, shoes, etc.

and Funk & Wagnalls New Standard Dictionary defines it as—

A device for fastening, consisting of a metal frame having one or more movable tongues, teeth, or catches. The buckle is usually fastened by one side to the end of a strap, and the tongues or teeth catch through another strap, or the other end of the same strap.

It is to be noted that the typical buckle described by the foregoing definitions is a one-piece affair, which holds the strap or belt to be fastened by means of passing the same through the buckle where it is caught by prongs, teeth, or catches, and it is urged by counsel for the defendant that the term is limited to such an article. This view finds some support in the decision of the Court of Customs and Patent Appeals in *United States* v. *Saks & Co.*, 13 C. C. P. A. 367, T. D. 41259, involving articles consisting of a metal back or frame covered with cloth, having a narrow strip of metal across the back which was used to attach the article to a shoe, wherein, after quoting numerous dictionary definitions of the term "buckle" of the same tenor as the above quotations, the court observed, referring to the articles there involved—

They do not seem to have any of the essential characteristics of a shoe buckle as that article is defined by the dictionaries * * *.

and held they were not provided for under the provision for "shoe buckles."

However, in a later case, that of *Neiman-Marcus Co. et al.* v. *United States*, T. D. 45553, this court held that certain metal articles in the shape of a buckle but without a prong or other means to connect the parts of a strap together, solely used as ornaments on ladies' shoes, were properly dutiable under the *eo nomine* designation of shoe buckles, basing its decision on the testimony of witnesses to the effect that the articles were commonly known as shoe buckles, the appearance of the article itself, dictionary definitions, and the court's common knowledge of that class of merchandise.

Returning to the articles before us, it is observed that while the dictionaries do not refer to a two-piece buckle, nevertheless both witness Blumlein for the plaintiff and witness Myers for the defendant stated that the items in issue were generally known by that designation. The court accepts this evidence as indicating that the common meaning of the term "buckle" includes the two-piece variety such as the articles at bar, and inspection of the samples is convincing that they are within the meaning of the term "buckle" as used in ordinary speech.

We do not overlook the fact that witness Myers testified that the articles are interchangeably known as "clasps." In this connection

it is to be noted that the competition is not between a provision for "clasps" and one for "buckles" but is between a general provision for "buckles * * * and like articles" and an *eo nomine* provision for "buckles," and it is the ordinary rule in customs law that an *eo nomine* designation takes precedence over a more general designation.

For the foregoing reasons judgment will issue in favor of the plaintiff herein.